**Mansoor Rana NASIR, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 96–2456.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1997.

Decided Sept. 2, 1997.

Before POSNER, Chief Judge, and EASTERBROOK and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Mansoor Rana Nasir, a citizen of Pakistan, entered the United States at Richmond, Vermont, on May 8, 1993. He entered "without inspection," which means he did not present himself to an officer of the Immigration and Naturalization Service. He was immediately apprehended and deportation proceedings were instituted. He conceded deportability but requested asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158. Because his request was made after deportation proceedings started, it was also considered a request for withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h)(1). The immigration judge denied his request, and the Board of Immigration Appeals, on a 2 to 1 vote, dismissed his appeal. This petition for review followed.

Section 208(a) authorizes the Attorney General, in her discretion, to grant asylum to an alien who is a "refugee," i.e., a person who is unwilling to return to his home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" Section 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). We review the BIA decision for an abuse of discretion, *DeSouza v. INS*, 999 F.2d 1156 (7th Cir.1993), and uphold it if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole[.]" 8 U.S.C. § 1105a(a)(4).

To be eligible for the withholding of deportation, an applicant must show a "clear probability of persecution on account of race, religion, nationality, political opinion, or membership in [a] defined social group." *Sharif v. INS*, 87 F.3d 932 (7th Cir.1996). *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). The burden for showing eligibility for the withholding of deportation is heavier; i.e., a "clear probability of persecution" is harder to prove than a "well-founded fear" of persecution.

Mark J. Thomas (argued), Chicago, IL, for Petitioner.

Samuel Der–Yeghiayan, Immigration & Naturalization Service, James G. Hoofnagle, Jr., Office of the United States Attorney, Civil Division, Chicago, IL, Richard M. Evans, David M. McConnell, Ellen Shapiro, Kristal A. Marlow, Department of Justice, Office of Immigration, Litigation, John T. Lynch, Jr. (argued), Department of Justice, Civil Division, Immigration, Litigation, for Respondent.

Nasir contends that he has a well-founded fear of persecution because he is an Ahmadi. He is a 28–year–old single male, a native of Karachi, Pakistan. He claims to be a member of the Ahmadiyya Movement, one of the 73 sects of Islam. The sect was founded by Mirza Ghulam Ahmed (sometimes Hahmady) and differs from fundamental Islam, principally because it considers Ahmed to be a successor of the Prophet Muhammad. The members are required by their faith to teach the continuing revelation of the word of God to Islam. Other Islamic groups consider members of the Ahmadi Movement to be heretics.

It appears that Ahmadis in general have suffered prejudice and discrimination in Pakistan ever since the country was founded in 1947. In 1974 the Second Amendment to the Pakistani Constitution of 1973 was enacted; it declared Ahmadis to be non-Moslem. In 1984, Article XX of the Pakistan Penal Code made Ahmadis liable for prosecution for any activities deemed likely to "outrage the religious feelings of Muslims"; it prohibits Ahmadis, for instance, from referring to their founder as a prophet or using the Muslim call to prayer. According to the Pakistan Human Rights Commission, between 1987 and 1992, 106 Ahmadis were charged under various statutes directed at their religious activities.

Nasir claims that in Pakistan he was a member of the Khuddam Al Ahmadiyya, which is a group for men aged 16 to 40. He says he performed religious work on their behalf and that, as a result of his work, he suffered discrimination at school, was beaten by Islamic fanatics, and threatened with death if he did not change his beliefs.

Using a false passport he left Pakistan and went to Canada, where he sought asylum. While he was in Canada he obtained an official Pakistani passport, on which his religion was given as Ahmadi. This passport was valid until October 17, 1998. Before his petition for asylum in Canada was decided, he entered the United States. Once in the United States, Nasir obtained a letter from the Ahmadi Mission in Canada which said he was an Ahmadi. Also while he was in the United States, Nasir obtained another Pakistani passport from the Pakistan Consulate in Los Angeles. Like the one issued in Canada, this passport listed his religion as Ahmadi. He also obtained a letter from Mr. Mubasher Ahmad of the Ahmadiyya Muslim Community Center in Baltimore, attesting that he was an Ahmadi. Mr. Ahmad is missionary of the South East Region of the Ahmadiyya Movement in the United States. The South East Region includes Pennsylvania, where Nasir was located at the time. Mr. Ahmad is one of the persons in the United States designated to attest to one's status as an Ahmadi.

■ In this case, the immigration judge and the Board found that Nasir failed to meet the less onerous burden for asylum and that his request for the withholding of deportation, therefore, also failed. The basis of the immigration judge's decision was, in essence, that Nasir failed to establish that he was a member of the religious sect which he claims is persecuted in Pakistan. The decision was based largely on credibility determinations, which in proceedings of this kind are entitled to deference on review. They are overturned by a reviewing court only when "extraordinary circumstances so require." *Carry Companies of Illinois v. NLRB*, 30 F.3d 922, 926 (7th Cir.1994).

■ Credibility determinations, however, are only relevant to the witness whose credibility is an issue. The lack of credibility of one witness does not necessarily undermine the credibility of another witness or of documentary evidence.

■ As we said, the immigration judge did not believe certain parts of Nasir's testimony. Also, prior to the hearing (we say "hearing" but it wasn't over and done with in one sitting; instead, it was continued many times) in his case, the State Department issued an advisory opinion, saying that some asylum applications filed by those claiming to be Ahmadi are false. For that reason, the immigration judge said he would make a careful credibility analysis; he then proceeded to cite several inconsistencies in Nasir's testimony. These include discrepancies between Nasir's statement made in connection with his request for asylum and his testimo-

ny at his hearing. One discrepancy involves an incident during 1986 when he was assaulted by six students of the Jamat Islami Student Association. In his statement he said he was "kicked and hit with fists about my face and body," but during the hearing, he could not remember any event occurring in 1986. Second, in his statement he said he was beaten in August 1990 by a Moslem religious leader called a Mullah and five of his followers, but at the hearing he denied being beaten by a Mullah. Also, in testimony Nasir said he was unemployed in Pakistan, but his biographical information for his request for asylum said he was employed as an assistant engineer for the Vespa Company in Karachi from 1988 to 1991. We cannot disagree with the immigration judge that Nasir's written statement is far more precise and provides considerable more detail regarding persecution than does his testimony. Such discrepancies certainly can support a finding that a witness lacks credibility.

In this regard, however, we have previously noted the difficulties judges have in assessing one's sincerity about religious beliefs. In a case involving a prison setting, although we noted that "an inmate may adopt a religion merely to harass the prison staff with demands to accommodate his new faith," we said that apparent back-sliding on religious practices may be evidence of the insincerity of the religious beliefs, but saying that it is conclusive evidence of insincerity would be improper. In a nonhierarchical belief system, "who is to say at what precise point orthodoxy becomes apostasy"? *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir.1988).

We recognize the motivation to lie in the situation before us, especially if Nasir can convince the Board that being an Ahmadi *automatically* qualifies him as a member of a group against which there is a pattern or practice of persecution in Pakistan. 8 C.F.R. § 208.13(b)(2). If Nasir's apparently less-than-convincing testimony on the issue were all that is in the record, we would have to determine whether this was an occasion in which it was appropriate for a court to evaluate whether a person is, in fact, one who holds certain religious tenets.

But in this record there is more. There are two passports issued by the Pakistani government which indicate Nasir's status as Ahmadi. True, both were issued in North America, where the consequences to Nasir of saying he is Ahmadi are advantageous, rather than disadvantageous; nevertheless, they remain official documents of the government of the country to which he does not wish to return.

Then there is information which was excluded from the record. These are the letters from Ahmadi officials (one in Canada and one in Baltimore) attesting to Nasir's religion. The INS attorney objected to their admission because of his inability to cross-examine the authors of the letters. The immigration judge excluded the letters on that basis in his oral decision, adding that they "lack detail" as well. The manner in which the documents were excluded strikes us as a bit unfair. To explain, however, requires us to slog through some rather tedious detail.

Nasir's immigration hearing was adjourned several times and it was convened in both Pittsburgh and Chicago. At one hearing on October 20, 1993, the judge and Nasir's attorney were in Chicago and Nasir was in Pittsburgh. Nasir requested that the hearing be held in Pittsburgh and asked for an Urdu interpreter. The hearing was resumed on May 24, 1994, in Pittsburgh. At that time, counsel tendered the letter from the Ahmadi official in Baltimore regarding Nasir's membership in the community. Before a ruling was made on the admission of the document, it became apparent that there was no interpreter. The immigration judge first stated that there had been no request for an interpreter but, after listening to a tape recording of the prior hearing, he acknowledged he was wrong, for the request had clearly been made. Because of the failure to provide an interpreter, the hearing was adjourned, and this time the parties agreed to a change of venue to Chicago. The documents were withdrawn, and Nasir's counsel was told he could resubmit them in the Windy City. When the hearing was adjourned, there was, despite the INS objection, no solid reason to think the documents

would not be received in evidence. We think this is a correct view of the situation because, at the Pittsburgh hearing (although he did not have an Urdu interpreter), Nasir had two witnesses in the room who would have testified that he was an Ahmadi. They would have probably been asked to testify if Nasir's experienced counsel thought the letters were in trouble.

When the hearing got going again in Chicago, Nasir's attorney apparently forgot that the documents were not in the record. When that misunderstanding was ironed out, he resubmitted them. The INS's objection to the documents this time was primarily that the letter from Canada was a facsimile. Again no ruling was made; the judge said he would rule in his final decision. When the decision was issued, the documents were excluded and the immigration judge ruled that Nasir had not shown that he was an Ahmadi. Because of the manner in which the documents were excluded, Nasir did not submit other information to the immigration judge that one of the letters was from a person authorized by the Ahmadiyya Movement, in cooperation with the State Department, to provide documentation of this sort. As we said earlier, the State Department had issued a warning that people were falsely claiming to be Ahmadis in their attempts to gain asylum. In response, the Ahmadi community had sent the Office of Asylum Affairs of the State Department a method for verifying membership. Nine people throughout the United States were designated as the ones who could attest to a petitioner being an Ahmadi. One of the nine is Mubasher Ahmad of Baltimore, the author of the letter regarding Nasir. Mr. Ahmad was in the hearing room in Pittsburgh when the proceeding was continued because the government didn't have an interpreter for Nasir.

Our problem is that Nasir submitted four documents to the immigration judge which support his claim that he was an Ahmadi. Two were rejected outright; and two others—the passports—were found to be suspect because they were issued in North America. As to the passports, neither the IJ nor the Board enlightened us as to why they found them to be unconvincing. The IJ says,

"Moreover, neither of these passports establishes [Nasir's] membership in the Ahmadi community in Pakistan since they were obtained significantly after his departure." The Board echoes the IJ, saying "[W]e do not find that the passports the respondent acquired establish his membership in the Ahmadi community in Pakistan since they were obtained significantly after his departure." One meaning of these statements could be that Nasir is now an Ahmadi but was not one while he lived in Pakistan. Then the relevant issue is whether he qualifies as a "refugee," pursuant to 8 U.S.C. § 1101(a)(42), based on a well-founded fear of future, not past, persecution. Another might be that his claim to be an Ahmadi, made after he left Pakistan, is self-serving; that is, once it was safe to claim to be an Ahmadi he did so in an attempt to stay here. Then the issue is one of credibility, and, as we have said, the IJ's credibility determinations are not lightly disturbed. Yet another might be that, due to the manner in which the designation is made, the passport is unconvincing as evidence of his status as an Ahmadi. The INS claims that the designation is made rather automatically: if one does not take an oath that he is not an Ahmadi, the passport will indicate that he is. Then the designation is no better than Nasir's word. We do not know on what basis the passports were so summarily rejected. The passports and the letters both need to be more carefully considered before a reasonable fact finder can say Nasir is not an Ahmadi.

That said, we note that Nasir's credibility problem may ultimately undermine his claim of individual persecution. Even giving his testimony credence, it may be that the events he describes do not rise to the level required for asylum. But we need not decide that issue today, nor is it our place to determine, in the first instance, whether Ahmadis as a group are subject to persecution to an extent that would bring Nasir within 8 C.F.R. § 208.13(2)(I)(A). What we are deciding is that under the peculiar situation presented by this administrative record—the failure to obtain an interpreter resulting in the transfer of the case to Chicago, thus eliminating any realistic presentation of live testimony from the author of a verification letter, cou-

pled with the lack of any real suspicion that such testimony would be required—the case deserves a second look. For that reason, we reverse and remand for a new hearing consistent with this opinion.

REVERSED AND REMANDED.