151 F.3d 1033
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Asif KHAN, Petitioner-Appellant,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellee.
 No. 98-1594.
 United States Court of Appeals, Seventh Circuit.
 Argued August 5, 1998.
Decided Aug. 11, 1998.
 
 Appeal from the Board of Immigration Appeals. No. Aom-uao-dwo.
 Before Hon. WILLIAM J. BAUER, Hon. HARLINGTON WOOD, JR., Hon. FRANK H. EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 The Immigration Judge (IJ) found Asif Khan to be less than "fully credible" and therefore denied his application for asylum and withholding of deportation. The Bureau of Immigration Affairs (BIA) adopted the IJ's decision and agreed that Khan's "testimony was neither consistent nor persuasive enough to establish that he either suffered past persecution or has a well-founded fear of persecution." Khan challenges that determination, claiming that the IJ erred in finding that Khan was not fully credible and that the BIA denied him due process by not giving due consideration to the totality of the evidence.
 
 
 2
 In 1947, the Asian subcontinent was divided into was is known today as India and Pakistan. Those individuals, and their direct descendants, who migrated from India to Pakistan are known as Mohajirs. Khan is such an individual and claims to be a member of the Mohajir Quami Movement (MQM), an organization dedicated to the political protection of Mohajirs.
 
 
 3
 After entering the United States without inspection on July 19, 1991, Khan applied for asylum administratively, claiming to have been persecuted on account of his religious beliefs. His application was denied and an Order to Show Cause was issued. Khan conceded deportability but, applied for asylum or withholding of deportation based on his MQM membership.
 
 
 4
 At his deportation hearing, Khan testified that he had joined the MQM in 1985 because he was dissatisfied with how the military government treated Mohajirs as "third rate citizens." Khan testified that he became more and more active in the MQM and from 1990 to 1991 he served as the joint secretary of a local MQM chapter. As joint secretary, Khan devoted six or seven hours a day to the MQM, arranging and conducting meetings, orienting new members, giving speeches and other work. Additionally, Khan stated that he took part in approximately 50 demonstrations from 1986 to 1990.
 
 
 5
 Khan also testified regarding incidents involving the government. He testified that, in December of 1987, he was one of the leaders at a demonstration of approximately 800-900 people. Consistent with his asylum application, Khan stated that during the demonstration the police threw oil on the demonstrators. Khan testified that he received burns on his legs and hands, and that his hair was burned.
 
 
 6
 Additionally, Khan testified about two beatings that he did not disclose in his asylum application. He testified that the first attack occurred when he left the MQM party office at midnight and three men, which he described as "government, police and CIA people," assaulted him and told him to leave the MQM party. Khan stated that he was beaten on another occasion but, did not explain the circumstances of the attack. Even though he did not mention these two attacks in his asylum application, he did list that his father and brother were arrested on account of his MQM activities.
 
 
 7
 Khan testified that while in the United States he has remained active in the MQM movement. Within one week of his arrival, Khan joined the MQM and currently attends meetings in Chicago. Additionally, he stated that he has participated in four MQM demonstrations: two in Washington, D.C., one in New York; and one in Chicago.
 
 
 8
 At the close of the hearing, the IJ determined that he could not fully credit Khan's testimony. The IJ had particular difficulty in believing that Khan participated in approximately 50 demonstrations, yet failed to disclose this information in his asylum application. Additionally, the IJ found it "inherently implausible that he could be so active in Pakistan without being arrested or having his presence detected by the police or military." The IJ noted that Khan was able to attend school, graduate from college, start a Master's program, work as a purchase agent, and obtain a passport, without any indication that the government was looking for him. Additionally, given Khan's inconsistent testimony and his failure to list the beatings on his asylum application, the IJ questioned the truthfulness of Khan's testimony regarding the two beatings he allegedly suffered. Finally, the IJ found that, while documentation is not required, Khan could have easily submitted some documentation substantiating his membership in the MQM, particularly given his alleged involvement in the United States. The IJ denied Khan's application for asylum and withholding of deportation but granted him voluntary departure. Khan appealed the decision to the BIA, which adopted the IJ's credibility determination.
 
 
 9
 Since the BIA adopted the IJ's decision, it is the IJ's decision that is the focus of this court's review. See Angoucheva v. INS, 5, 106 F.3d 781, 789 (7th Cir.1997). An IJ's credibility determinations are entitled to great deference on review and are overturned only when "extraordinary circumstances so require." Nasir v. INS, 122 F.3d 484, 486 (7th Cir.1997) (internal quotations omitted).
 
 
 10
 On appeal, Khan argues that the IJ erred in finding that he could not fully credit Khan's testimony. Khan claims that the IJ failed to give relevant and specific reasons for his adverse credibility finding. Khan also argues that the BIA failed to give due consideration to all the evidence when it accepted the IJ's conclusions.
 
 
 11
 The IJ's decision not to credit Khan's testimony is supported by substantial evidence and there are no extraordinary circumstances which would warrant overturning the credibility determination. First, Khan testified that he was able to avoid arrest because he was in constant hiding. But, he also claimed that he had participated in approximately 50 demonstrations, graduated from college, started a Master's program, held a job, and gone to the MQM office every day for six to eight hours a day. The IJ concluded that Khan could not have avoided arrest if he had been so active or if the authorities were truly searching for him. The IJ found Khan's testimony inherently implausible, and the record contains substantial evidence to support the IJ's determination. No "extraordinary circumstances" require otherwise.
 
 
 12
 Second, the IJ determined that he could not credit Khan's testimony concerning the two beatings he allegedly suffered because of the internal inconsistencies in Khan's testimony concerning the attacks and the fact that Khan had neglected to list the attacks on his asylum application. Khan's testimony regarding the attacks was vague, lacked detail and was often contradictory. Additionally, even though Khan listed the fact that his brother and father were arrested and beaten on his asylum application, he neglected to mention his alleged beatings. "Such discrepancies certainly can support a finding that a witness lacks credibility." Nasir, 122 F.3d at 487.
 
 
 13
 Khan also argues that the BIA violated his due process rights by failing to adequately consider the evidence in the record. Khan's argument is based on the fact that the BIA adopted the IJ's decision instead of independently reviewing the record. This court has stated, however, that a summary dismissal by the BIA is appropriate provided that the BIA's decision "reflect[s] that it has heard and thought and not merely reacted." Cuevas v. INS, 43 F.3d 1167, 1170 (7th Cir.1993) (internal quotations omitted). Here, the BIA specifically stated that it was affirming the decision of the IJ after it had "reviewed the record of proceedings, the Immigration Judge's decision, and the respondent's contentions on appeal." This explanation is sufficient to satisfy due process. See Dobrican v. INS, 77 F.3d 164, 167 (7th Cir.1996); Guentchev v. INS, 77 F.3d 1036, 1038 (7th Cir.1996).
 
 
 14
 For the foregoing reasons, the BIA's decision is
 
 
 15
 AFFIRMED.