Mohamed A. HASHI, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 03–3661.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 2004.

Decided Jan. 10, 2005.

Sonseere H. Goldenberg, Minneapolis, MN, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, for Respondent.

Before EASTERBROOK, WOOD, and EVANS, Circuit Judges.

## ORDER

Mohamed Hashi, a native and citizen of Somalia, seeks review of the denial of his applications for asylum and withholding of removal to his home country.[1] Hashi challenges the immigration judge's determination that he does not have a well-founded fear of persecution or is likely to be tortured if returned to Somalia.

Hashi was born in Mogadishu, Somalia, in 1981. He is a member of the Tuni clan, a subclan, we are told, of the Digil clan. When he was about 9 years old, Hashi and his family moved to Qoryoley, a town some distance from Mogadishu where the Digil clan was more powerful.

At his removal hearing, Hashi testified that he remained in Qoryoley only briefly because of an attack against his family. He said that 20 members of the Hawiye clan came to his house and beat him. Hashi claims the men told him that "he was a member of a small minority clan with no militia to protect you, that is why we are attacking you," and that they would kill members of Hashi's family if the attackers

1. At oral argument, Hashi's attorney said that he joined a class-action suit challenging INS's authority to remove aliens to Somalia because there is no functioning government there to accept them. *See Ali v. Ashcroft,* 346 F.3d 873 (9th Cir.2003). The Supreme Court recently heard oral arguments on the same question, *see Jama v. I.N.S.,* 329 F.3d 630 (8th Cir.2003), *cert. granted,* 540 U.S. 1176, 124 S.Ct. 1407, 158 L.Ed.2d 76 (2004). Because our case focuses on Hashi's asylum application and not the broader question, the outcome of *Jama* will not affect our result, although it could determine whether Hashi is removed.

ever saw them again. Hashi's mother later told him that his attackers were Hawiye clan members who were attacking all of the houses in the area inhabited by members of minority clans.

After the assault in Qoryoley, Hashi's family moved to Kismayo, where it was attacked again. Hashi testified that six members of the Darod clan beat and sexually assaulted members of his family, including his mother. Hashi said the Darods were attacking all of the people in the area suspected of being from rival clans. After that attack, Hashi's family moved to Nairobi, Kenya, where Hashi lived until coming to the United States.

Using a fake passport his mother bought for $3,000, Hashi came to New York in February 1999. He filed an application for asylum 2 months later, claiming he feared he would be tortured and killed if he returned to Somalia because he is a Tuni. He said that no part of Somalia is safe for him.

At the hearing, Abdirazik Haile, a 32–year–old native and citizen of Somalia who has been in the United States since being granted asylum in 1998, testified that Hashi was, in fact, a member of the Tuni clan and that the Tuni and other clans were oppressed in Somalia. But the IJ denied Hashi's application for asylum, finding that Hashi does not have a genuine fear of future persecution and that such a fear would not be objectively reasonable. The Board of Immigration Appeals affirmed the IJ's decision without writing a separate opinion, so we review the IJ's decision on Hashi's petition for review. See Capric v. Ashcroft, 355 F.3d 1075, 1087 (7th Cir. 2004).

The Attorney General has discretion to grant asylum to any alien who qualifies as a "refugee," that is, a person who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(a), 1253(h)(1); Mitev v. I.N.S., 67 F.3d 1325, 1329 (7th Cir.1995). A showing of past persecution creates a presumption that the applicant has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1)(D) (2003).

The IJ accepted Hashi's claim that he is a member of the Tuni clan (and thus a member of a particular social group) and that Hashi's family was attacked in Qoryoley.[2] But the IJ also found that Hashi failed to establish that any of the violence was a result of his family's clan membership and thus did not qualify as a refugee.

We review Hashi's claim under the substantial evidence test. Mitev, 67 F.3d at 1330. "Applying this 'highly deferential' standard, we must uphold the [IJ's] findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Sivaainkaran v. INS, 972 F.2d 161, 163 (7th Cir.1992)). Hashi must show that no reasonable factfinder could fail to find that he had a reasonable fear of persecution because of his clan membership. See INS v. Elias–Zacarias, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

We accept Hashi's claim that returning to Somalia would be dangerous for him

---

2. There was some question at oral argument about whether the IJ believed there were any attacks, but the language of the opinion suggests that he believed Hashi's claim that there were. And so we accept the statement in Hashi's brief that "the Judge did not contest [Hashi's] claim that he and his family were tortured in the past." As we will discuss, the IJ denied Hashi's claim based on the question of why, and not whether, the attacks occurred.

because, as he says in his brief, "it is undisputed that [Somalia] was and remains in a state of anarchy." But those who face danger as a result of general unrest are not necessarily entitled to asylum, *see Hengan v. I.N.S.,* 79 F.3d 60, 62 (7th Cir. 1996), and we cannot conclude that the IJ was unreasonable in finding that Hashi did not show that the attacks on his family were the result of his clan affiliation and not the more general rampant violence in Somalia at the time.

To support his claim, Hashi offered little other than his testimony that the attackers told him that his family was being attacked because they were members of a minority clan without a militia. As a result, Hashi's claim rested largely on whether the IJ believed his story. He did not. So, the case before us turns on our assessment of the IJ's adverse credibility determination. And it is well-recognized that reviewing courts only overturn such determinations when "extraordinary circumstances so require." *See Carry Companies of Illinois v. NLRB,* 30 F.3d 922, 926 (7th Cir.1994), and cases such as *Nasir v. INS,* 122 F.3d 484, 486 (7th Cir.1997), and *Malek v. INS,* 198 F.3d 1016, 1021 (7th Cir.2000), extending the principle to immigration cases.

Although we cannot know for sure whether Hashi was telling the truth, we do not find extraordinary circumstances, either. As an initial matter, the IJ justifiably found Hashi's credibility to be suspect based in part on the fact that Hashi entered the United States using false documents and stayed here illegally for 2 months before filing an application for asylum.

The IJ also questioned two aspects of Hashi's story. First, he found it hard to believe that attackers would take the time to explain the reasons for their attack to a 10–year–old boy and that Hashi would be able to remember certain details of the attack that took place when he was 10 years old so precisely. We believe that a 10–year–old could vividly remember such a traumatic event. We also find it plausible that attackers from one clan seeking to terrorize members of a minority clan would explain the reasons for an attack in an effort to scare the minority clan members into moving away. But we also find the IJ's concerns—that it is hard to believe that a 10–year–old would remember the exact wording of the attackers' statement, as Hashi claims to do, while failing to remember such details as whether the attackers demanded money or what they took from the house (because, Hashi said, he was so young at the time that he can no longer remember)—to be reasonable.

Second, the IJ found that it "appear[ed] as though Hashi plagiarized details of his statement from country reports submitted with his application." While the similarities might mean that Hashi's statement was plagiarized, they might also mean that Hashi's claims of widespread clan warfare are accurate. The possibility of an alternate explanation is not, however, sufficient to overturn the IJ's conclusion. *See Ahmad v. INS,* 163 F.3d 457, 461 (7th Cir. 1999) ("[A] reviewing court should not supercede an administrative agency's findings simply because an alternative finding could also be supported by substantial evidence.").

Put together, we are not entirely convinced that the evidence shows that Hashi was not credible. But, because he offered little to corroborate his story, we also find little compelling evidence to support a finding that Hashi had to be telling the truth. Thus, we accept the credibility determination made by the IJ, who, by seeing Hashi testify, was much better positioned than we are to fairly evaluate his story.

In fact, much of Hashi's testimony supports the IJ's conclusion. For example, Hashi said that his attackers hit many of the other houses in the area. He also testified that they stole items from his house, adding credence to the IJ's suggestion that the attackers might have been entering homes to rob them, not because they were members of minority clans. With questions about Hashi's credibility and the strong possibility that Hashi's family was tragically caught up in the general anarchy in Somalia (and not targeted because of their clan affiliation), we find the IJ's determination that Hashi was not subjected to persecution to be reasonable.

Hashi also argues that the IJ erred in finding that he does not have a well-founded fear of persecution if he is returned to Somalia. To prevail, Hashi needed to show that his fear was both genuine and objectively reasonable, *see INS v. Cardoza–Fonseca*, 480 U.S. 421, 440–41, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), and that the threat of persecution exists throughout the country, *see INS v. Ventura*, 537 U.S. 12, 18, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). But, as the IJ noted, Hashi offered little evidence that he would be persecuted throughout Somalia. A United Nations report found several peaceful areas of the country (although Hashi questions the IJ's reliance on the report, we have found that an IJ may take administrative notice of a country's changed conditions, *see Medhin v. Ashcroft*, 350 F.3d 685, 690 (7th Cir.2003)), and a 1998 State Department report suggested that areas in northern Somalia are stable. Those reports are sufficient to uphold the IJ's determination.

Next, Hashi challenges the IJ's finding that he is not eligible for Withholding of Removal under the United Nations Convention Against Torture. For that claim, Hashi needed to show that it is "more likely than not" that he would be subjected to "severe pain or suffering, whether physical or mental," intentionally inflicted to obtain information or a confession, as punishment, to intimidate or coerce him, or as the result of discrimination. *See* 8 C.F.R. § 208.18(a)(1) (2003). Hashi said he fears torture because of the 1991 attacks against his family. But, again, he failed to provide evidence to corroborate his claim that the attack was because his family is Tuni.

Hashi makes two final claims. First, he argues that statements made by the IJ questioning his credibility prove that the IJ was biased against him. But assessing credibility is precisely what was required, and there is no evidence that the IJ prejudged whether Hashi was telling the truth. Second, Hashi contends that the Board of Immigration Appeals failed to comply with its regulation limiting the Board's ability to affirm a decision without opinion, 8 C.F.R. § 1003.1(e)(4) (2003), but, since we have found that the IJ reached the correct result, and there are no unusual facts or legal claims, we find this argument to be without merit. **AFFIRMED.**