**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1080**

PIN ZHUANG CHEN,

              Petitioner,

        v.

ERIC H. HOLDER, JR., Attorney General,

              Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted:  September 2, 2014      Decided:  September 10, 2014

Before KING and THACKER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Petition granted by unpublished per curiam opinion.

Troy Nader Moslemi, MOSLEMI & ASSOCIATES, New York, New York, for Petitioner.  Stuart F. Delery, Assistant Attorney General, Linda S. Wernery, Assistant Director, Susan Bennett Green, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Pin Zhuang Chen, a native and citizen of the People's Republic of China, petitions for review of the decision of the Board of Immigration Appeals ("Board") dismissing his appeal from the immigration judge's ("IJ") order denying his applications for asylum, withholding of removal and withholding under the Convention Against Torture. Because we find that the adverse credibility finding that formed the foundation for the Board's decision is not supported by substantial evidence, we grant the petition for review, vacate the Board's order and remand for further proceedings.

The Immigration and Nationality Act ("INA") authorizes the Secretary of the Department of Homeland Security or the Attorney General to confer asylum on any alien who establishes refugee status. See 8 U.S.C. § 1158(b)(1)(A) (2012); Hui Pan v. Holder, 737 F.3d 921, 927 (4th Cir. 2013). The alien bears the burden of proof and must establish either past persecution or a well founded fear of future persecution on account of a protected ground. See 8 U.S.C. § 1101(a)(42)(A) (2012); Hui Pan, 737 F.3d at 927.

Under the REAL ID Act, an IJ, after "[c]onsidering the totality of the circumstances, and all relevant factors," may make an adverse credibility determination based on factors such as the plausibility of the applicant's account, the consistency

2

between the applicant's written and oral statements, the internal consistency of each such statement, the consistency of such statements with other evidence of record, or any other relevant factor. 8 U.S.C. § 1158(b)(1)(B)(iii); Hui Pan, 737 F.3d at 928. A credibility determination may rest on any relevant factor even if such factor does not "go[ ] to the heart of the applicant's claim." Id. The REAL ID Act's credibility provision affords a flexible, "commonsense approach while taking into consideration the individual circumstances of the . . . applicant." Singh v. Holder, 699 F.3d 321, 329 (4th Cir. 2012) (internal quotation marks omitted). It also ensures that an IJ does not "cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." Hui Pan, 737 F.3d at 928 (internal quotation marks omitted); see also Shah v. Attorney Gen. of the U.S., 446 F.3d 429, 437 (3d Cir. 2006) ("Although we don't expect an Immigration Judge to search for ways to sustain an alien's testimony, neither do we expect the judge to search for ways to undermine and belittle it. Nor do we expect a judge to selectively consider evidence, ignoring that evidence that corroborates an alien's claims and calls into question the conclusion the judge is attempting to reach." (citation and internal quotation marks omitted)). When there is an adverse credibility finding, we "must assess whether the IJ or [the

3

Board] identified non-speculative, 'specific, cogent reason[s]' in support of the adverse credibility finding." Hui Pan, 737 F.3d at 928 (quoting Dankam v. Gonzales, 495 F.3d 113, 120-21 (4th Cir. 2007) (internal quotation marks omitted)).

The scope of our review is narrow. Hui Pan, 737 F.3d at 926. We will affirm so long as the decision is not manifestly contrary to law. Id. An adverse credibility finding is reviewed for substantial evidence. Id. "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2012). If an adverse credibility finding is based on speculation and conjecture rather than specific and cogent reasoning, it is not supported by substantial evidence. See Tewabe v. Gonzales, 446 F.3d 533, 538 (4th Cir. 2006). An adverse credibility finding is "generally fatal" to an asylum claim unless the applicant submits sufficient evidence independent of his testimony. Hui Pan, 737 F.3d at 930. Because the Board did not adopt the IJ's order, our review here is limited to the Board's decision. Martinez v. Holder, 740 F.3d 902, 908 & n.1 (4th Cir. 2014).

Chen testified that he was persecuted after he was arrested during an illegal underground Christian church service at a church member's home. He testified that he was kicked, punched and beaten with rubber batons by police and then

4

detained for thirty days, with no more beatings. Chen stated that after his release from detention, he came to the United States so that he could freely practice his faith.

The IJ denied Chen's applications for relief after making an adverse credibility finding. The IJ based the adverse credibility finding "principally" upon the conclusion that Chen did not submit credible evidence showing that he practiced his Christian faith after arriving in the United States. (Joint Appendix ("J.A.") at 99). Also critical to the IJ's determination was an impromptu telephone conversation the IJ had with Pastor Wong from the Chinese Promise Baptist Church in Brooklyn, New York. Pastor Wong submitted a letter stating that Chen had participated in church services and indicated that he was available by telephone if there were further questions. Chen had testified that Pastor Wong and he were good friends. During the telephone conversation with the IJ, Pastor Wong could not recall Chen and indicated that he wrote many letters for parishioners and that some parishioners would come once or twice and not return. The IJ also took issue with Chen's testimony regarding the injuries he suffered as a result of the alleged beating and the number of Bibles that were confiscated by the police when the underground church service was raided.

The Board identified four of the IJ's findings in support of its conclusion that the IJ's adverse credibility

5

determination was not clearly erroneous: (1) Chen initially testified that his underground church had only one Bible that was shared by participants, but testified later that the police confiscated ten Bibles; (2) it was implausible that Chen had bruises all over his body when he was released from custody after being beaten only once on the first day of his thirty-day detention; (3) Chen claimed to be good friends with Pastor Wong and yet Wong had no personal knowledge of him; and (4) it was inconsistent for Chen to claim he came to the United States to freely practice his religion, but he had not attended church services since moving to North Carolina nine months before the hearing. We will discuss each reason in turn.

Chen testified that he did not own a Bible when he was in China, but that the church leader had one Bible that was shared by church members. He also testified that newcomers to the church did not have Bibles, but that the church leader would sometimes receive Bibles that he would then sell to some of the members. Chen also testified that the Bibles that were confiscated by the police belonged to the individual members. The Board and the IJ relied upon Chen's response to a question concerning whether he owned a Bible in China. Chen said that the church leader had a copy, and "we did not." (J.A. at 133). He later testified that the police confiscated ten Bibles when they raided the underground church service.

6

The Board and the IJ concluded that Chen's testimony was inconsistent because he testified there was only one Bible and yet ten were supposedly confiscated by the police. Our review of the record does not support such a conclusion. Chen's testimony that "we did not" have a Bible was not in response to a question regarding whether any church members had Bibles; and without further questioning it was an unsupported assumption to conclude that none of the church members on the day of the police raid had his or her own Bible. What Chen's testimony shows is that he did not own a Bible, that the church leader had a Bible that could be shared, that other members also did not own a Bible and that some members had Bibles that were bought from the church leader. We conclude that the Board's adverse credibility finding in this regard is not supported by substantial evidence.

We also conclude that substantial evidence does not support the finding that it was implausible that Chen would have bruises all over his body when he was released from detention. Chen acknowledged that some of his bruises had healed during the thirty-day period, but others remained. The IJ acknowledged that Chen may have "mild signs" of bruising after his release, but that it "strain[ed] credibility" to believe Chen "was covered essentially all over his body with bruises." (J.A. at 97). We note that the IJ found that Chen did not claim that the

7

beating was severe. (J.A. at 98). However, Chen did exactly that by testifying that the beating was "very severe." (J.A. at 141).

We have reviewed Chen's testimony and conclude that the Board's and the IJ's findings in this regard are not supported by specific and cogent reasons. We have held that "the requirement that an IJ provide a specific and cogent reason for an adverse credibility finding leaves ample room for the IJ to exercise common sense in rejecting an applicant's testimony even if the IJ cannot point to contrary evidence in the record to refute it." Tewabe, 446 F.3d at 540 (internal quotation marks and alterations omitted). However, "[t]he point at which a [credibility] finding . . . ceases to be sustainable as reasonable and, instead, is justifiably labeled 'speculation,' in the absence of an IJ's adequate explanation, cannot be located with precision." Ming Xia Chen v. BIA, 435 F.3d 141, 145 (2d Cir. 2006). In this instance, Chen testified that he suffered a severe beating by three guards, that he was subsequently detained for thirty days during which he was not treated for his injuries, and that when he was released some bruises had healed and others all over his body had remained. Without additional evidence, we cannot conclude that Chen's testimony was implausible and we are compelled to decide that this credibility finding Chen is not supported by the record.

Also, we conclude that reliance on the IJ's telephone conversation with Pastor Wong in order to sustain the adverse credibility finding is not supported by substantial evidence. The Board found no clear error with the finding that Pastor Wong had no personal knowledge of Chen. A review of the transcript of the telephone call shows that Wong was asked only once if he knew Chen, to which he replied he did not know the person, and that response was given at the beginning of the telephone call before Wong asked to have the spelling of Chen's name. (J.A. at 171). As Wong appeared to be attempting to determine the nature of the telephone call, he asked if the IJ was inquiring about "the Chen come to my church," suggesting that perhaps Wong did know of a Chen that attended his church. (Id.). The IJ had to ask Wong five times to verify his own identity. (J.A. at 170-71). The IJ and Wong required several interchanges even to spell Chen's name for Wong. (J.A. at 171-72). Also, Wong was not given anything to refresh his memory, such as a copy of the letter or one of the photographs Chen submitted showing Chen with Wong. He also had no advance notice of the telephone call. (J.A. at 327). Nor was Wong subject to cross-examination. Furthermore, Wong's corroborating letter was written almost eighteen months before the merits hearing, and Chen testified that he last attended church in New York in April 2009, almost a year before the hearing.

Based on our review of the record, we conclude that the finding that Wong had no personal knowledge of Chen is not supported by substantial evidence.

We also conclude that it was not inconsistent for Chen to claim that he came to the United States to freely practice his religion and yet had not attended church services since moving to North Carolina nine months before the hearing. It is difficult to determine the sincerity of an alien's religious belief. See Nasir v. INS, 122 F.3d 484, 487 (7th Cir. 1997) (acknowledging difficulty judges have assessing one's sincerity about religious beliefs); Mejia-Paiz v. INS, 111 F.3d 720, 729 (9th Cir. 1997) (a less than extremely devout church member may still qualify for asylum if he may still face persecution on account of imputed religious belief). A failure to openly practice religion in some circumstances may not indicate a lack of sincerity. See, e.g., Singh v. Holder, 720 F.3d 635, 644 (7th Cir. 2013) ("[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?") (internal quotation marks omitted).

Here, Chen's intention for coming to the United States was formed in China. At that time, Chen could not have appreciated the reality of being an undocumented alien in the

10

United States and the difficulties of attending a Chinese-speaking church in North Carolina. Chen testified that he did not attend church because (1) he did not have transportation or a driver's license and there was no one who could drive him to church; (2) his shift on Sundays started at 11:00 a.m. and ended at midnight; (3) he does not have immigration status and he is afraid to go anywhere; and (4) he still owes more than $60,000 of the $75,000 that was paid to the snakehead to smuggle him into the United States. Chen also testified that when he has returned to New York, he has gone to church.

The IJ noted that "[t]here are many Christian churches that hold services on Friday nights or during the week." (J.A. at 95). However, the Chinese Christian church in Winston-Salem only indicated that it had services on Sundays at 10:45 a.m. (J.A. at 215). There was no evidence of any church, much less one offering services in Chinese, that could accommodate Chen's schedule. The IJ may rely upon common sense in reaching an adverse credibility finding, but should take into consideration the alien's circumstances. Singh, 699 F.3d at 329. We conclude that Chen's circumstances as revealed by his testimony did not render his stated intention for coming to the United States sufficiently inconsistent with his actions to support an adverse credibility finding.

11

The Board also agreed with the IJ that Chen failed to provide corroborating evidence from friends and fellow parishioners regarding his church attendance in New York. We note that Pastor Wong's corroborating letter was discredited as a result of the telephone conversation that we conclude was unreliable. We fail to see how the balance would have shifted favorably toward Chen even if he had provided corroborating letters from friends and fellow parishioners regarding his church activities. See Djadjou v. Holder, 662 F.3d 265, 276 (4th Cir. 2011) (letters from family and friends not objective corroborating evidence).

Accordingly, we conclude that the adverse credibility finding is not supported by substantial evidence and we grant the petition for review, vacate the Board's order and remand for further proceedings consistent with this opinion.[*] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

PETITION GRANTED

---

[*] We express no opinion as to the ultimate disposition of Chen's case.