# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-3597

YORDANOS MUHUR,

*Petitioner,*

v.

JOHN D. ASHCROFT, Attorney General
of the United States,

*Respondent.*

_____

On Petition for Review of an Order of
the Board of Immigration Appeals.
No. A 77 383 237

_____

SUBMITTED MAY 20, 2004—DECIDED AUGUST 24, 2004

_____

Before FLAUM, *Chief Judge*, and POSNER and WILLIAMS,
*Circuit Judges.*

POSNER, *Circuit Judge.* Yordanos Muhur, who succeeded
in obtaining from us a reversal of her removal order and the
remand of her case for asylum to the immigration service,
355 F.3d 958 (7th Cir. 2004), now seeks an award of attor-
neys' fees and costs under the Equal Access to Justice Act,
28 U.S.C. § 2412(d)(1)(A). The Act provides that a court shall
award the "prevailing party" his attorneys' fees and other
expenses "unless the court finds that the position of the

United States was substantially justified or that special circumstances make an award unjust."

The petition presents several issues. The first is whether Muhur was a "prevailing party," since all she got from us was a remand for reconsideration of her asylum application; we did not order that she be granted asylum. In the context of social security, the Supreme Court has ruled that an applicant who persuades the court of appeals to set aside the Social Security Administration's denial of benefits is a prevailing party in the judicial proceeding because nothing remains to be done by the court, which having found error has finished with the case and relinquished jurisdiction. *Shalala v. Schaefer*, 509 U.S. 292, 300-02 (1993). It is different if the remand is merely to enable the agency to consider new evidence, because in that case the judicial proceeding is merely suspended. *Former Employees of Motorola Ceramic Products v. United States*, 336 F.3d 1360, 1366 (Fed. Cir. 2003), while in the former case the applicant incurred additional legal expense as a result of the agency's error—a material consideration, as the cases make clear, *Krecioch v. United States*, 316 F.3d 684, 688 (7th Cir. 2003); *Kopunec v. Nelson*, 801 F.2d 1226, 1229 (10th Cir. 1986). We thus agree with *Rueda-Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997), that when a court of appeals, as in this case, reverses a denial of asylum because the denial was erroneous, and sends the case back to the immigration service for further proceedings, the applicant is a prevailing party; for like the Ninth Circuit we cannot see any difference between such a case and *Schaefer*.

The next question is whether the government's position, in defending the denial of asylum to Muhur, "was substantially justified or . . . special circumstances make an award unjust." The government cites us to no special circumstances, and offers merely a footnote of argument that it had a substantial justification for the position it took. A glance at our

opinion granting Muhur's petition for review will explain the government's diffidence. We held that the immigration judge had committed a "clear error" in ruling that Muhur need not fear persecution on account of her being a Jehovah's Witness if she was returned to Eritrea, which persecutes Jehovah's Witnesses, because as long as she practiced her religion covertly the authorities would not discover that she *was* a Jehovah's Witness and they would therefore leave her alone. 355 F.3d at 960-61. By this token, we remarked, ancient Christians were not persecuted by the Roman Empire because they were safe as long as they practiced their religion in secret. In opposing the fee petition all the government say on this score is that Muhur did not have a well-founded fear of persecution because she was not "a known practitioner" of her religion. True—but it was because she hadn't become a Jehovah's Witness until years after leaving Eritrea that the Eritrean authorities didn't know that she is a Jehovah's Witness. She would become a "known practitioner" soon enough if upon her forced return to Eritrea she tried to practice her religion openly. All this assumes, of course, that she *is* a Jehovah's Witness, which the government does not concede and is one of the questions open on remand. But that does not affect her status as a prevailing party in this court.

Against this the government says only that its "argument that Ms. Muhur did not have a well-founded fear of persecution on account of her professed religion because she was not a known practitioner of that religion was supported by case law in the analogous area of political opinion," citing *Keo v. Ashcroft*, 341 F.3d 57, 60 (1st Cir. 2003), and *Disu v. Aschcroft*, 338 F.3d 13, 18 (1st Cir. 2003). In *Keo* the question was whether the Cambodian authorities knew that Keo had once been a secret member of a political party; there was no suggestion that he wanted to engage in open, or for that matter any, political activities if he returned to Cambodia.

As for Disu, he "was a low-level volunteer in a political organization who did nothing to assume a prominent role in opposition to the government." There was no suggestion that he wanted to assume a prominent role that might invite persecution. Neither was a case in which the asylum seeker could have avoided persecution only by concealing his political views. But Muhur (always assuming she really is a Jehovah's Witness) could avoid persecution only by concealing her religious beliefs and observances.

The last question is the amount of attorneys' fees and court costs to which Muhur is entitled. The amounts sought, after certain adjustments properly urged by the government, are modest: $9,439 in attorneys' fees and $459.52 in costs. However, the EAJA caps hourly rates at $125 "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee," 28 U.S.C. § 2412(d)(2)(A), and Muhur seeks reimbursement at rates ranging from $60 to $225 an hour. *Pierce v. Underwood*, 487 U.S. 552, 572 (1988), held that the statutory ceiling can be pierced for attorneys having "some distinctive knowledge or specialized skill needful for the litigation in question" and gave as examples attorneys having a practice specialty such as patent law and attorneys who use a knowledge of foreign laws or languages in their practice.

The Fifth Circuit has held that immigration practice, unlike patent practice, is not a practice specialty for this purpose. *Perales v. Casillas*, 950 F.2d 1066, 1078-79 (5th Cir. 1992). But we interpret this to mean merely that immigration lawyers are not ipso facto entitled to fees above the statutory ceiling. Fair enough, but the cases pierce the ceiling for immigration lawyers who bring relevant expertise to a case, such as knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law, in which such expertise is

needed to give the alien a fair shot at prevailing. E.g., *Nwaokolo v. INS*, 314 F.3d 303 (7th Cir. 2002) (per curiam); *Jideonwo v. INS*, 224 F.3d 692 (7th Cir. 2000); *Nasir v. INS*, 122 F.3d 484 (7th Cir. 1997). The immigration laws are immensely complex (perhaps second only in complexity to the law of postconviction remedies) and their application often requires knowledge of foreign cultures unfamiliar to most Americans, as in this case. The top rate sought here, $225 an hour for Herbert Igbanugo, is modest by current standards of attorney compensation and the government does not object to his rate, noting the "extensive argument in support of the claimed rate" for him. It does object to the $190 an hour sought for the lawyer, Riddhi Jani, who put in the most hours on the case. We cannot find anything in the papers submitted by Muhur concerning Jani's qualifications, experience, special knowledge, standard billing rates, or anything else that might bear on her entitlement to a fee in excess of the statutory ceiling. We shall therefore reduce her hourly fee to the ceiling. With this adjustment, the petitioner is awarded attorneys' fees of $7,053.50 along with costs of $459.52, for a total of $7,513.02.

SO ORDERED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*