

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-2004

# Johnson v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1931

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Johnson v. Atty Gen USA" (2004). *2004 Decisions.* Paper 41.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/41

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-1931

———————

JIMMY JOHNSON,

Petitioner

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent

———————

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A73-149-183)

———————

Argued October 28, 2004

Before: NYGAARD, AMBRO, and GARTH, <u>Circuit Judges</u>

(Opinion filed     December 23, 2004   )

Visuvanathan Rudrakumaran, Esquire (Argued)
875 Avenue of the Americas
New York, NY   10001

        Attorney for Petitioner

Peter D. Keisler
    Assistant Attorney General
United States Department of Justice

Civil Division
Donald Keener
   Assistant Director
Alison Marie Igoe
   Senior Litigation Counsel
Douglas E. Ginsburg, Esquire
John M. McAdams, Jr., Esquire
Janice K. Redfern, Esquire
Norah A. Schwarz, Esquire (Argued)
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC   20044

---

OPINION

---

AMBRO, Circuit Judge

Jimmy Johnson petitions for review of the order of the Board of Immigration

Appeals ("BIA") denying his application for asylum.[1]  That order reversed the decision of

the Immigration Judge ("IJ").   We grant the petition.

## I. **Factual and Procedural History**

Johnson, a native and citizen of Liberia, arrived in the United States on September

2, 1994.  The Immigration and Naturalization Service ("INS")[2] detained Johnson and

---

[1]Johnson also requests that we reverse the portion of the BIA's decision denying his application for withholding of removal under the Immigration and Nationality Act ("INA").  However, Johnson makes no substantive arguments regarding his withholding claim, and we therefore deem it waived.  See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (a passing reference to an argument in a party's brief is insufficient to bring the issue before this Court).

[2]As a result of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the INS has ceased to exist as an agency within the Department of Justice,

2

placed him in exclusion proceedings for arriving in the United States without valid documentation. Johnson then applied for asylum and withholding of removal.

On March 23, 1995, the IJ held a hearing on Johnson's claims. Johnson testified that, on September 20, 1992, he had been forcibly conscripted into the army of the National Patriotic Front of Liberia ("NPFL")—a group associated with Charles Taylor, who later became the President of Liberia. Johnson escaped in 1994 and testified that he feared he would be killed if returned to Liberia. Although the IJ did not believe some aspects of Johnson's story, he gave him "the benefit of the doubt" and determined that Johnson was credible. The IJ, however, denied Johnson's application for asylum and withholding of removal on the ground that Johnson had not suffered past persecution on account of political opinion or any other ground enumerated in the INA. He also found that Johnson was not likely to suffer future persecution. The BIA affirmed the IJ's decision on August 8, 1995.

On September 25, 1996, Johnson filed a *pro se* motion to reopen and/or reconsider and was granted a stay of deportation pending the resolution of this motion. On July 31, 1997, the BIA determined that the motion was untimely and thus it lacked jurisdiction to hear it. The BIA also considered whether Johnson's untimely motion to reopen his asylum application fell within the exception for reopening out of time based on changed

and its enforcement functions have been transferred to the Department of Homeland Security.

country conditions and concluded that it did not. On February 9, 1999, our Court dismissed for lack of jurisdiction Johnson's petition for review of the BIA's 1997 order.

On May 12, 1999, Johnson, represented by his current counsel, filed another motion to reopen to seek protection under the Convention Against Torture ("CAT"), implemented by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277 § 2242, 112 Stat. 2681, 2822 (1998). The BIA granted the motion and remanded the matter to the IJ for consideration of Johnson's CAT claim. At his second hearing before the IJ, Johnson testified, *inter alia*, that (1) he believed the Liberian civil war was unjust, (2) the NPFL espoused that "if you do not follow them, they view you as supporting other groups," and (3) people who were caught trying to leave the NPFL were killed. The IJ proceeded to grant Johnson asylum, withholding of deportation, and relief under CAT.

The BIA held, on January 10, 2001, that the IJ had erred as a matter of law in considering Johnson's applications for asylum and withholding of removal because the BIA's remand order was limited to consideration of his CAT claim. The BIA affirmed the IJ's grant of relief under CAT and vacated the grants of asylum and withholding of removal. Johnson again came to our Court, and it granted his petition for review of the portion of the BIA's order vacating the IJ's grant of asylum and withholding of removal and remanded to the BIA for further consideration. See Johnson v. Ashcroft, 286 F.3d 696 (3d Cir. 2002).

4

On remand, the BIA acknowledged that it had not been clear when remanding Johnson's case to the IJ. It then proceeded to address Johnson's asylum and withholding of removal claims on the merits. In doing so, the BIA vacated the IJ's decision granting Johnson asylum and withholding of removal, finding that Johnson could not "make out a claim that any adverse treatment he fears in Liberia is on account of a protected ground." As for the CAT claim, the BIA reiterated its affirmance of the IJ's grant of relief.

Johnson petitions yet again for review of the portion of the BIA's decision denying him asylum.[3]

## II. Jurisdiction and Standard of Review

Under former INA § 106, as amended by the transitional rules for judicial review in § 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 100 Stat. 3009-456, 3009-626 (Sept. 30, 1996), we have jurisdiction to review a final order of removal by the BIA. IIRIRA's transitional rules apply to Johnson's petition because he was placed in deportation proceedings before April 1, 1997, and the BIA entered a final order of removal after October 30, 1996.

This case involves factual findings made by the BIA. We must uphold those

_____

[3]Even though Johnson was granted relief under CAT, a final order of removal exists here because CAT protection does not affect the finality of such a removal order. See 8 C.F.R. § 208.16(f) (an alien granted relief under CAT may be deported to a third country other than the one to which removal has been withheld or deferred); 8 C.F.R. § 208.18(c)(1), (c)(2) (the Secretary of State may seek assurances that the alien will not be tortured if removed and the Attorney General may order removal if he determines that the assurances are sufficiently reliable to allow it).

findings if they are supported by substantial evidence. <u>Singh-Kaur v. Ashcroft</u>, 385 F.3d 293, 296 (3d Cir. 2004).

### III. Discussion

The Attorney General and his delegates may grant asylum to any alien who qualifies as a refugee under the INA. 8 U.S.C. § 1158(b)(1). A refugee is an alien who is "unable or unwilling" to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). Aliens have the burden of supporting their asylum claims. <u>Gao v. Ashcroft</u>, 299 F.3d 266, 272 (3d Cir. 2002). "Testimony, by itself, is sufficient to meet this burden, if 'credible.'" <u>Id.</u> (citing 8 C.F.R. § 208.13(a)). To establish eligibility for asylum, the applicant must demonstrate past persecution by substantial evidence or a well-founded fear of persecution that is subjectively and objectively reasonable. <u>Lukwago v. INS</u>, 329 F.3d 157, 177 (3d Cir. 2003).

Here the BIA denied Johnson's asylum claim because it found that he "ha[d] failed to show that he was persecuted on account of his political opinion, and that his 'persecution' was not solely the result of the guerillas' aim in seeking to fill their ranks in order to carry out the war with the government and pursue their political goal, their political motive being irrelevant." In reaching this conclusion, the BIA relied heavily on the Supreme Court's decision in <u>INS v. Elias-Zacarias</u>, 502 U.S. 478 (1992), that forcible

6

recruitment into military service, without more, does not constitute persecution on account of political opinion. Our Court has held, however, that Elias-Zacarias does not foreclose a claim for asylum based on forced conscription by a guerilla organization if other factors are present. Lukwago, 329 F.3d at 169 ("Even if forced conscription by a guerilla organization alone would not qualify a victim for asylum[,] that does not mean that, in appropriate circumstances, it cannot constitute persecution."). Specifically, an applicant may be eligible for asylum if his forced conscription was on account of one of the grounds enumerated in the INA. Cf. id. at 170 (stating that the petitioner's past persecution, which included forced military service, could be a basis for asylum if it was on account of petitioner's race, religion, nationality, membership in a particular social group, or political opinion); see also Melkonian v. Ashcroft, 320 F.3d 1061, 1068 (9th Cir. 2002) (noting that Elias-Zacarias would not foreclose an applicant's asylum claim based on forced conscription when the applicant testified that he was targeted for conscription based on his ethnicity and religion).

In this case, in addition to its reliance on its interpretation of Elias-Zacarias, the BIA found that Johnson had failed to show that he was persecuted other than as a consequence of the guerillas' desire to add members to fight for their side. It also addressed whether Johnson's forced conscription was on account of political opinion, and the answer was no. We must therefore determine whether these conclusions are supported by substantial evidence.

We have recognized that "'persecution may [also] be on account of a political opinion that . . . the foreign government has imputed to [the applicant.]'" Lukwago, 329 F.3d at 181 (quoting Balasubramanrim v. INS, 143 F.3d 157, 165 n.10 (3d Cir. 1998)). On appeal, Johnson argues that if he is deported to Liberia, the NPFL will impute an anti-NPFL political opinion to him on the basis of his desertion from that group. He supports this position with several statements from his testimony at his second hearing before the IJ. At that hearing, Johnson testified that he believed the Liberian civil war was unjust and that the NPFL had the view that "if you do not follow them, they view you as supporting other groups." He also testified that people who were caught trying to leave the NPFL were killed.

The IJ credited Johnson's testimony and the BIA did not disturb this credibility finding. In reviewing the IJ's decision on asylum, however, the BIA did not discuss whether Johnson had established imputed political opinion. Moreover, the BIA did not mention Johnson's testimony that the NPFL attributes an opposing political view to those who do not follow it. Because the BIA, in reviewing the IJ's decision on Johnson's second asylum hearing, did not even consider Johnson's credible testimony from that hearing—which is crucial to determining whether Johnson has established past persecution or a well-founded fear of persecution on account of political opinion or imputed political opinion—we cannot say that the BIA's decision is supported by

8

substantial evidence.[4]

## IV. Conclusion

Thus, we grant the petition and remand Johnson's case to the BIA for further proceedings.

---

[4]The BIA did not explicitly address whether Johnson had a well-founded fear of persecution presumably because it found that any adverse treatment Johnson feared was not on account of political opinion. Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1223, 1240 (3d Cir. 1993). If so, does not the BIA's decision that Johnson was entitled to relief under CAT (in other words, that it was more likely than not that Johnson would be tortured upon return to Liberia) require a finding that Johnson has established that the adverse treatment he fears rises to the level of persecution?