

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2005

# Johnson v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-1931

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Johnson v. Atty Gen USA" (2005). *2005 Decisions.* Paper 766.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/766

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1931

JIMMY JOHNSON,

Petitioner

v.

*ALBERTO R. GONZALES, Attorney General
of the United States,

Respondent

On Motion for Attorneys' Fees

Argued October 28, 2004

Before: NYGAARD, AMBRO, and GARTH, Circuit Judges

(Opinion filed: July 25, 2005)

        * Substituted pursuant to Federal Rule of Appellate
Procedure 43(c)(2).

Visuvanathan Rudrakumaran, Esquire (Argued)
875 Avenue of the Americas
New York, NY   10001

       Attorney for Petitioner

Peter D. Keisler
   Assistant Attorney General
United States Department of Justice
Civil Division
Donald Keener
   Assistant Director
Alison Marie Igoe
   Senior Litigation Counsel
Douglas E. Ginsburg, Esquire
John M. McAdams, Jr., Esquire
Janice K. Redfern, Esquire
Norah A. Schwarz, Esquire (Argued)
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC   20044

       Attorneys for Respondent

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Jimmy Johnson moves for attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). For the reasons that follow, we grant his motion.

## I. Background

Johnson petitioned our Court for review of the decision of the Board of Immigration Appeals ("BIA") denying his asylum application. Johnson is a native of Liberia who fled that country after being forcibly recruited into and then deserting the army of the National Patriotic Front of Liberia ("NPFL")—a group associated with Charles Taylor, who later became the President of Liberia (and subsequently abdicated that position). The BIA determined that Johnson "ha[d] failed to show that he was persecuted on account of his political opinion, and that his 'persecution' was not solely the result of the guerillas' aim in seeking to fill their ranks in order to carry out the war with the government and pursue their political goal, their political motive being irrelevant."

We granted Johnson's petition for review, holding that the BIA's decision was not supported by substantial evidence when it failed even to consider Johnson's testimony from his second asylum hearing (which the Immigration Judge ("IJ") determined credible in a finding not disturbed by the BIA) in

3

reviewing the IJ's decision resulting from that hearing.[1]  *See Johnson v. Ashcroft*, No. 03–1931, 2004 WL 2966435, at *3 (3d Cir. Dec. 23, 2004).[2]

Johnson's motion for attorneys' fees relating to his petition for review is now before us.

## II. Jurisdiction

Under the EAJA, a motion for attorneys' fees must be filed "within thirty days of final judgment in the action."  28 U.S.C. § 2412(d)(1)(B).  In this context, "'final judgment' means a judgment that is final and not appealable . . . ."  28 U.S.C. § 2412(d)(2)(B).  We have held that "the thirty day cut-off for EAJA petitions begins when the government's right to

---

[1]At that hearing Johnson testified, *inter alia*, that (1) he believed the Liberian civil war was unjust, and (2) the NPFL forces that had forcibly recruited him and had since gained power in Liberia would impute an anti-NPFL (and therefore anti-Charles Taylor) political opinion to him based on his desertion.  He testified that the NPFL acted on the principle that "if you do not follow them, they view you as supporting other groups."

[2]We also held that Johnson had waived his claim that the BIA erred in reversing the IJ's grant of relief on his withholding of removal claim because he referred to that claim only in passing in his brief before this Court.  *Id.* at *1 n.1.

appeal the order has lapsed." *Taylor v. United States*, 749 F.2d 171, 174 (3d Cir. 1984) (per curiam).

The Government's time to petition for a writ of *certiorari* in this case expired on March 22, 2005. Johnson, however, filed his motion on March 18, 2005. This technicality need not concern us, as we have noted that "[t]he EAJA establishes only a deadline after which . . . petitions may not be filed; earlier filing is possible." *Id.* at 175 n.8. Johnson's motion for attorneys' fees thus is properly before us, and we now turn to the merits of that motion.

### III. Discussion

"[T]he essential objective of the EAJA [is] to ensure that persons will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in the vindication of their rights . . . ." *Clarke v. INS*, 904 F.2d 172, 178 (3d Cir. 1990) (internal quotation omitted). The EAJA thus provides, in pertinent part, as follows:

> Except as otherwise specifically provided by statute, a court *shall* award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action

5

> . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless* the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphases added).

Accordingly, we must first determine whether Johnson was the "prevailing party" in this action under the EAJA. If we conclude that he is, we must then consider whether the position of the United States in this case was "substantially justified."[3]

A.  *Prevailing Party*

The question we are faced with here—whether an alien who prevails on his/her petition for review before us but whose case is remanded to the BIA for further proceedings (and who therefore may not ultimately prevail in his/her immigration

---

[3]The Government does not contend that "special circumstances" exist in this case, and so we do not discuss this element of the statute.

6

proceedings) is a "prevailing party" for EAJA purposes—is one of first impression in our Circuit. The Court of Appeals for the Ninth Circuit, in a decision later adopted by the Court of Appeals for the Seventh Circuit, has answered that question in the affirmative. *See Rueda-Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997) (rejecting Government argument that "petitioners [were] not prevailing parties within the meaning of the EAJA because they merely secured a remand for further agency action, and did not obtain affirmative relief on the merits of their underlying claims for asylum and withholding of deportation"); *see also Muhur v. Ashcroft*, 382 F.3d 653, 654 (7th Cir. 2004) (agreeing with *Rueda-Menicucci* and holding that "when a court of appeals, as in this case, reverses a denial of asylum because the denial was erroneous, and sends the case back to the immigration service for further proceedings, the applicant is a prevailing party").

Both Courts held that this result was dictated by the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292 (1993). *Muhur*, 382 F.3d at 654; *Rueda-Menicucci*, 132 F.3d at 494, 495. In *Schaefer*, the Court's opinion explained that "[i]n cases reviewing final agency decisions on Social Security benefits, the exclusive methods by which district courts may remand to the Secretary are set forth in sentence four and sentence six of [42 U.S.C.] § 405(g) . . . ." 509 U.S. at 296. The Court ruled that a Social Security claimant who secured a "sentence-four" remand to the agency—as opposed to a "sentence-six" remand—for further proceedings was a

7

prevailing party under the EAJA because such a remand "terminate[d] the litigation with victory for the plaintiff." *Id.* at 300–02.

In reaching this conclusion, the Court emphasized that a "sentence-four" remand results in the immediate entry of judgment (and relinquishment of jurisdiction) by the District Court, whereas in the "sentence-six" remand context judgment is not entered (and the District Court retains jurisdiction) until post-remand agency proceedings are complete. *Id.* at 297. Thus, a "sentence-four" remand terminates federal court litigation in favor of the plaintiff, but a "sentence-six" remand does not. The Court further reasoned that a person who obtained a "sentence-four" remand reversing the Secretary of Health and Human Services's denial of benefits "certainly" met its description of a prevailing party—someone who has "'succeeded on any significant issue in litigation which achieve[d] some of the benefit . . . sought in bringing suit.'" *Id.* at 302 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989)).

The Seventh and Ninth Circuits determined that a remand to the BIA in an immigration case is essentially the same as a "sentence-four" remand in a Social Security case. *See Muhur*, 382 F.3d at 654 (holding that the Court could not "see any difference" between a remand to the BIA and the "sentence-four" remand at issue in *Schaefer*); *Rueda-Menicucci*, 132 F.3d at 495 (holding that both "sentence-four" remands and remands

8

to the BIA "terminate[] judicial proceedings and result[] in the entry of final judgment").[4]  We agree with this conclusion.  As the Seventh Circuit stated, the Social Security claimant in *Schaefer*

> who persuade[d] the court of appeals to set aside the Social Security Administration's denial of benefits [was] a prevailing party in the judicial proceeding *because nothing remain[ed] to be done by the court, which having found error ha[d] finished with the case and relinquished jurisdiction*.

*Muhur*, 382 F.3d at 654 (emphasis added).

We have the same situation here.  Johnson secured the setting aside of an erroneous BIA decision in his case.  We entered judgment in his favor and relinquished jurisdiction.

_____

[4]In *Rueda-Menicucci*, the Ninth Circuit explicitly overruled its prior case law on this issue in light of *Schaefer*.  *Rueda-Menicucci*, 132 F.3d at 495 ("We conclude that *Schaefer* effectively overrules our [previous] holdings . . . that the entry of judgment remanding a case to the BIA for further consideration does not constitute a final judgment in favor of the petitioner.").

Thus, pursuant to the reasoning of *Schaefer*, he is the prevailing party in this proceeding for EAJA purposes regardless whether he ultimately prevails in his underlying immigration proceeding.[5]

Accordingly, we join our sister Circuit Courts in holding that an alien whose petition for review of a BIA decision is granted by our Court and whose case is then remanded to the BIA is a prevailing party under the EAJA, and may therefore be entitled to attorneys' fees. Having determined that Johnson is a prevailing party, we turn to whether the Government's position in this litigation was "substantially justified," a second leg of analysis in Johnson's quest for fees.

---

[5]We note that the Government merely points out that whether an alien in Johnson's situation is a prevailing party is an issue of first impression in our Circuit and does not argue that we should not adopt the position taken by other courts. The Government does assert, in the context of arguing that its litigation position was substantially justified, that Johnson did not prevail on his withholding of removal claim. However, Johnson clearly prevailed on the main issue in this case—his asylum claim. *Cf. Schaefer*, 509 U.S. at 302 (noting that litigant who had succeeded on a significant issue in the litigation was a prevailing party). Moreover, the fact that he did not succeed on one of his claims is relevant to the determination of the amount of fees that should be awarded, *see* Section IV below, not to the determination of whether Johnson is entitled to fees under the EAJA.

B.    *Substantially Justified*

The Supreme Court has held that, as used in the EAJA, "substantially justified" does not mean "justified to a high degree" but instead means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 553, 565 (1988). Put another way, substantially justified means having a "reasonable basis in both law and fact." *Id.* (internal quotation omitted). Thus, "[a] court must not assume that the government's position was not substantially justified simply because the government lost on the merits." *Kiareldeen v. Ashcroft*, 273 F.3d 542, 554 (3d Cir. 2001).

We have held that, in immigration cases, the Government must meet the substantially justified test twice—once with regard to the underlying agency action and again with regard to its litigation position in the proceedings arising from that action. *See id.* at 545 ("First, [the Government] must independently establish that the agency action giving rise to the litigation was substantially justified. Second, it must establish that its litigation positions were substantially justified."). In our analysis of the first threshold, we ask whether the government had a reasonable basis to begin the agency proceeding and litigate before the IJ. *Id.* at 554.

Other courts have applied similar tests in making the "substantially justified" determination in an immigration

11

context. In particular, the Court of Appeals for the Second Circuit—noting that "[t]he EAJA defines 'position of the United States' as 'in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based'"—has held that courts must look at the Government's position in both the underlying agency proceeding as well as in the federal court proceeding in determining whether that position was substantially justified. *Vacchio v. Ashcroft*, 404 F.3d 663, 675 (2d Cir. 2005) (quoting 28 U.S.C. § 2412(d)(2)(D)); *see also Al-Harbi v. INS*, 284 F.3d 1080, 1084–85 (9th Cir. 2002) (per curiam) (holding that "[i]n making a determination of substantial justification, the court must consider the reasonableness of both the underlying government action at issue and the position asserted by the government in defending the validity of the action in court" (internal quotation omitted)).

Thus, as the Ninth Circuit has emphasized, "when we decide whether the government's litigation position is substantially justified, the EAJA . . . favors treating a case as an inclusive whole rather than as atomized line items . . . ." *Al-Harbi*, 284 F.3d 1084–85 (internal quotation omitted) (also stating that it "is the decidedly unusual case" where "there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in 'reasonable, substantial and probative evidence in the record'" (quoting *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001))). With these standards in mind, we consider whether the Government's

12

position was substantially justified in our case.

### 1.    The Agency Action

It is the Government's burden to prove that its position at the agency level was substantially justified. However, the Government's response to Johnson's motion makes no reference to its position during the underlying proceedings (focusing instead on the proceedings in our Court), and it has thus waived any argument on this ground. *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). Even if we were to reach this issue, we would conclude that the Government's position in Johnson's immigration proceedings was not substantially justified.

During Johnson's removal proceedings, the Government's main legal argument appears to have been the same one it made before us—that Johnson was not entitled to relief because his asylum claim was solely based on his forcible recruitment into the NPFL, which the Supreme Court held in *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), is insufficient to demonstrate persecution on account of political opinion. *Id.* at 483. The Government's reliance on *Elias-Zacarias* at the outset of Johnson's removal proceedings had a reasonable basis in law and fact because, in his asylum application, Johnson stated only that the NPFL killed deserters to teach them a lesson and did not mention anything from which a conclusion could be drawn that the persecution he feared suffering if returned to Liberia was

13

due to his political opinion.

However, at his second asylum hearing—the hearing that gave rise to the BIA decision reviewed by our Court—Johnson testified that the NPFL would attribute an anti-Charles Taylor political opinion to him based on his desertion and that he feared being persecuted as a result of that imputed political opinion if removed to Liberia.  We have held that an asylum claim may be based on imputed political opinion.  *See Lukwago v. Ashcroft*, 329 F.3d 157, 181 (3d Cir. 2003) (recognizing that an alien may be eligible for asylum if the persecution he suffered, or has a well-founded fear of suffering, is "'on account of a political opinion the applicant actually holds or on account of one the foreign government has imputed to him'" (quoting *Balasubramanrim v. INS*, 143 F.3d 157, 165 n.10 (3d Cir. 1998))).  The BIA has also recognized the availability of asylum relief for aliens who were persecuted, or feared persecution, based on imputed grounds since at least 1996, long before the Government's appeal of the IJ's grant of relief to Johnson.  *See In re S-P-*, 21 I. & N. Dec. 486, 489 (BIA 1996) ("Persecution for 'imputed' grounds (*e.g.*, where one is erroneously thought to hold particular political opinions . . . ) can satisfy the 'refugee' definition.").

In addition, both our Court and the BIA have used the "mixed motive" mode of analysis in asylum cases.  Under that jurisprudence, an alien may be eligible for asylum even if the persecution he or she suffered, or fears suffering in the future,

14

is only partially based on a ground enumerated in the Immigration & Nationality Act ("INA"), 8 U.S.C. § 1101(a)(42). *See, e.g., Singh v. Gonzales*, 406 F.3d 191, 196 (3d Cir. 2005) (holding that an applicant for asylum need not prove that the persecution he or she suffered occurred solely on account of one of the five grounds enumerated in the INA but rather could demonstrate eligibility for asylum by showing that the persecution occurred at least in part on account of one of those grounds); *Amanfi v. Ashcroft*, 328 F.3d 719, 727 (3d Cir. 2003) (noting that the BIA's decision in *In re S-P-* "held that an alien need only prove that the persecutor was motivated in significant part by a protected characteristic"); *In Re S-P*, 21 I & N Dec. at 497.

Once the Government knew that Johnson had credibly testified that he feared persecution at least in part on account of an imputed political opinion, its continued reliance on *Elias-Zacarias* to argue that the IJ erred in granting Johnson relief was no longer reasonable. Accordingly, Johnson is entitled to attorneys' fees under the EAJA because (1) the Government has waived any argument that its litigation position at the agency level was substantially justified, and (2) even if it did not we would conclude that the Government's position before the agency did not have a reasonable basis in law and fact. For the sake of completeness, however, we briefly address the second prong of the substantially justified test—whether the Government had a reasonable basis for defending the BIA's action before our Court.

15

2. The Government's Position in Opposing Johnson's Petition for Review

As stated earlier, we held that the record in this case compelled the conclusion that the BIA erred in denying Johnson's asylum claim because (1) *Elias-Zacarias* does not foreclose an asylum claim based on forcible recruitment into a guerilla group if another factor (*i.e.*, an enumerated ground under the INA) is present, and (2) the BIA erred in failing even to mention Johnson's testimony from his second asylum hearing. *Johnson*, 2004 WL 2966435, at *2. The Government nonetheless contends it was "substantially justified in arguing that [Johnson] feared punishment as a deserter and that his fears were unrelated to a statutorily protected ground." It relies on Johnson's statement in his asylum application that the NPFL killed deserters "to give a sanguinary lesson to other warriors" and Johnson's testimony in his first hearing before the IJ that deserters were killed to teach a lesson to others who had been forcibly recruited into NPFL service.

This argument is doubly flawed. First, the Government, like the BIA, ignores Johnson's credible testimony from his second asylum hearing. Second, the Government's assertion that its position was substantially justified ignores our (and the BIA's) "mixed motive" case law. *See* Section III.B.1, *supra*. Under that line of cases, Johnson may be eligible for asylum so long as the persecution he fears suffering if returned to Liberia is based in significant part on imputed political opinion. The

16

Government's apparent position to the contrary—that the portions of Johnson's testimony that the NPFL killed deserters for reasons other than political opinion foreclose Johnson's asylum claim—does not comport with the mixed motive mode of analysis and is therefore not substantially justified.[6] *Cf. Rueda-Menicucci*, 132 F.3d at 495 (holding that the Government's position that petitioner was not entitled to asylum was not substantially justified when the Government defended a BIA decision that was "contrary to agency and circuit precedent").

---

[6] We note that our case is quite different from those in which, despite the alien's success on his or her petition for review, the Government was held to have had a substantially justified litigation position. For example, in *Vacchio* and *Kiareldeen*, the Government's position was determined to be substantially justified because it was defending the constitutionality of a statute (in those cases, provisions of the INA). *Vacchio*, 404 F.3d at 674; *Kiareldeen*, 273 F.3d at 550–51. Our case, by contrast, presented no constitutional issues. Our *Kiareldeen* decision also emphasized that the Government's position (in favor of detaining the petitioner, who was suspected of being involved in the 1993 World Trade Center attack, throughout his removal proceeding) was substantially justified in light of the passage of the USA Patriot Act and the Government's compelling interest in investigating potential terrorist activity. 273 F.3d at 555–56. There is no such national security/investigatory interest implicated here.

17

* * * * *

In sum, we conclude that an alien in Johnson's position—one whose petition for review before our Court has been successful and whose case is remanded to the BIA for further proceedings—is a prevailing party under the EAJA. Because the Government's position was not substantially justified at the agency level or before us, Johnson is, as the prevailing party in this action, entitled to attorneys' fees. Our final inquiry is the appropriate amount of the fee award.

## IV. Amount of Award

The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee . . . ." 28 U.S.C. § 2412(d)(2)(A)(ii). Johnson's counsel argues that he is entitled to reimbursement at a rate of $200 per hour because immigration cases require specialized expertise and because there were a limited number of qualified attorneys who would have taken Johnson's case. We disagree.

This case primarily raised the issue of whether the BIA had failed to consider Johnson's testimony regarding the political opinion that might be imputed to him by the NPFL.

18

Although Johnson's counsel is an experienced attorney who specializes in immigration, he was here faced with a case of straightforward application of the substantial evidence and asylum standards. It was not a case that required research into little-known areas of immigration law or particular knowledge of Johnson's Liberian culture—factors that might justify an award above the statutory cap. *Cf. Rueda-Menicucci*, 132 F.3d at 496 (holding that "[w]hile . . . a specialty in immigration law could be a special factor warranting an enhancement of the statutory rate[,] . . . counsel's specialized skill was not needful for the litigation in question" (internal quotation and citations omitted)). We also note that Johnson's counsel offers no evidentiary support for his assertion that there were a limited number of qualified attorneys available who would take on this case at the statutory rate. For the reasons above, we find no reason to pierce the statutory ceiling, and thus we award attorneys' fees to Johnson's counsel at the statutorily prescribed rate of $125 per hour.

The number of hours counsel spent on Johnson's case is reasonable, and the Government does not argue otherwise.[7]

---

[7]The Government's argument that Johnson should not be awarded fees for any work on his withholding of removal claim (because he did not prevail on that claim) is rendered moot by Johnson's reply brief, which clarifies that his counsel has not requested any fees for work done in furtherance of the withholding of removal claim and requests reimbursement solely

19

Therefore, we award Johnson fees for his counsel's claimed 82 hours of work, at the statutory rate, plus $549.89 in costs, resulting in a total award of $10,799.89.

---

for work done on Johnson's asylum claim.