**Xue Hui LIN, Petitioner,**

**v.**

Alberto R. GONZALES,[1] Attorney General of the United States, Respondent.

No. 04–0942–AG NAC.

United States Court of Appeals, Second Circuit.

Dec. 5, 2005.

Karen Jaffe, New York, NY, for Petitioner.

Matthew H. Mead, United States Attorney, Steven K. Sharpe, Assistant United States Attorney, Cheyenne, WY, for Respondent.

Present: Hon. Chester J. STRAUB, Hon. Robert D. SACK, and Hon. Sonia SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION of this petition for review of the Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED, the decision of the BIA is VACATED, and the case is remanded for further proceedings consistent with this decision.

Xui Hui Lin, through counsel, petitions for review of the BIA order affirming the immigration judge's ("IJ") decision denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), and separately finding that Lin had failed to show that relocation within China was not possi-

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as a respondent in this case.

ble. We assume the parties' familiarity with the underlying facts and procedural history in this case.

This Court reviews the IJ's findings of fact, including adverse credibility findings, under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *Jin Hui Gao v. United States Att'y Gen.*, 400 F.3d 963, 964 (2d Cir.2005); *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73–79 (2d Cir.2004); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178–83 (2d Cir.2004); *Secaida–Rosales v. INS*, 331 F.3d 297, 306–13 (2d Cir.2003); *Diallo v. INS*, 232 F.3d 279, 286–88 (2d Cir.2000).

█ The IJ's adverse credibility determination was not supported by substantial evidence. Lin's testimony that after she arrived at the clinic, she "realized" that most of the women were married and she wanted to "leave right away" but did not "because somebody [wa]s outside," is entirely consistent with her written statement that, once she arrived at the clinic, she was "humiliated and embarrassed" and "made up [her] mind to sneak away," but was prevented from doing so by guards. Lin's written statement that Wang Jian, the village official whose courtship she had rejected, stood beside the doctor, that he "stared at [her] with his obscene look," and that "[t]his check-up really put [her] to the greatest shame [she'd] ever had in her life," is likewise not inconsistent with her testimony that Wang Jian stood beside the doctor during the physical examination and helped to part her legs.

In addition, Lin's testimony that Wang Jian had sent a "matchmaker" to her parents is not inconsistent with her written statement that Wang Jian "sent somebody to convince [her] to marry him." Her reference specifically to the notification "of IUD insertion" in her written application reflects the frame of mind of one who had already experienced the examination and came to understand what the notification entailed. Lin did not state in either her application or her testimony that she herself underwent an IUD insertion. The record here, again, does not reveal an inconsistency. Further, the statement that "[their] income went down sharply," albeit somewhat general, did not exclude the allegation that the tax officers eventually raised the tax as Lin testified. Additionally, in contrast to the IJ's observation that Lin did not mention the closure of her sister's shop in her application, Lin did state in her application that "[she] could not bear to see the small business [her] sister had painstakingly built up *was* [sic] *destroyed*" (emphasis added).

The IJ further erred in making a conclusory finding that Lin's explanation for answering "no" to the airport interview question of whether she had any problems with the government in China was not "believable." *Ramsameachire*, 357 F.3d at 179 ("[B]ecause those most in need of asylum may be the most wary of governmental authorities, the BIA and reviewing court must recognize, in evaluating the statements made in an interview, that an alien may not be entirely forthcoming in the initial interview." (internal citation omitted)).

The record supports the IJ's finding that Lin did not present evidence of past persecution because the extreme humiliation Lin experienced, the fine, and the raised tax do not necessarily amount to persecution. However, if deemed credible, Lin may have presented evidence to establish a claim for asylum based on a well-founded fear of future persecution. Lin's fear of serious harm could be construed as objectively reasonable given that (1) she was forced to undergo a humiliating physical examination as though she had violated the family planning policy, (2) she was fined when she refused to do so, and (3)

her sister's shop was subjected to a special tax. In rejecting Lin's claim, the IJ erred in dismissing, in a conclusory fashion, the abuse Lin suffered simply because it was partly motivated by personal reasons. *See In re S–P–,* 21 I. & N. Dec. 486, 489 (BIA 1996) (finding that "[p]ersecutors may have differing motives for engaging in acts of persecution, some tied to reasons protected under the Act and others not" and that in these cases, "an applicant does not bear the unreasonable burden of establishing the exact motivation of a 'persecutor' where different reasons for action are possible"); *Johnson v. Gonzales,* 416 F.3d 205, 212 (3d Cir.2005) ("[A]n alien may be eligible for asylum even if the persecution he or she suffered, or fears suffering in the future, is only partially based on [an enumerated ground].") On remand, we instruct the IJ to consider not only Jian's motives but the motives of the other family planning officials who harassed her.

On the other hand, Lin does not present any evidence or argument that she has been tortured or that it is more likely than not that she will be tortured if she returns to China. The record thus supports the IJ's denial of Lin's CAT claim.

■ Lastly, although the BIA states that it is *concurring* with the IJ in finding that Lin failed to show that internal relocation to another part of China was not possible, the record does not reveal any such finding in the IJ's decision. In this respect, the BIA's finding is not supported by substantial evidence. If the BIA was making a *de novo* finding, it did so contrary to the new regulations. *See* 8 C.F.R. § 1003.1(d)(3)(I) (instructing the BIA to review an IJ's findings of fact under the "clearly erroneous" standard, for all appeals filed as of September 25, 2002).

For the foregoing reasons, the petition for review is GRANTED, the BIA's February 2004 decision is VACATED, and the case is remanded for further proceedings consistent with this decision.

Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).